# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

SAMANTHA THERAULT,

    *Plaintiff*,

    v.

TOWN OF MADISON, CONNECTICUT STATE
POLICE OFFICER STANDARDS AND TRAINING
COUNCIL, MARC FASANO, and JACK DRUMM,

    *Defendants*.

</td><td>

No. 3:23-cv-01301-MPS

</td></tr>
</table>

## <u>RULING ON MOTIONS TO DISMISS</u>

Samantha Therault brings this action against her former employer, the Town of Madison ("the Town") and the Connecticut State Police Officer Standards and Training Council ("the Council"), alleging they discriminated against her in violation of the Americans with Disabilities Act ("ADA), 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 *et seq.*, and that they retaliated against her in violation of the Connecticut Workers' Compensation Retaliation Act (CWCRA), Conn. Gen. Stat. § 31-290a. ECF No. 36 at 6–25. She also alleges that the Town, the Council, Council Director Marc Fasano, and Madison Police Department Chief John "Jack" Drumm violated her Fourteenth Amendment rights to equal protection and due process under 42 U.S. § 1983. ECF No. 36 at 25–31. The Town moves to dismiss all claims against it and Drumm under Federal Rule of Civil Procedure 12(b)(6). ECF No. 44. The Council separately moves to dismiss all claims against it and Fasano under both Rule 12(b)(1) and 12(b)(6). ECF No. 46. For the reasons that follow, both motions to dismiss are granted in part and denied in part.

1

I.    **BACKGROUND**

   A.  **Factual Allegations**

   The following facts, which I accept as true for purposes of this ruling, are drawn from the Amended Complaint.  ECF No. 36.

   On September 8, 2021, the Town hired Therault as a police officer in the Madison Police Department.  ECF No. 36 ¶¶ 12, 48.  Previously, Therault had worked as a "federal police officer with Amtrak Police and was trained at the Federal Law Enforcement Training Center Academy and commissioned in Rhode Island and Massachusetts," *id.* ¶ 7, but the Town still required her to attend the Council's training program to obtain police officer certification in Connecticut, *id.* ¶¶ 13, 181.  The Council conducts MPD's training programs and "exercises complete control over the issuance of police officer certifications, which is a mandatory requirement for continued employment with the MPD."  *Id.* ¶ 14; *see also id.* ¶¶ 31, 182.  Under state regulations, Therault was required to obtain certification within one year of her hire date.  *Id.* ¶¶ 30, 43, 49, 171, 213.

   On September 8, 2021, Therault began her mandatory training with the Council.  *Id.* ¶¶ 15, 48, 172.  During training on or about November 13, 2021, however, Therault tore the meniscus in one of her knees, an injury which "rendered her medically restricted from doing physical activity beyond standing and walking."  *Id.* ¶ 16; *see also id.* ¶¶ 23, 172.  Despite her injury, Plaintiff continued to physically attend and observe all training sessions with the Council, but she did "not physically participate in those training courses that required significant physical [exertion]."  *Id.* ¶¶ 17, 19, 174.  Without notifying Therault, *id.* ¶ 38, the Council marked her absent from "approximately 4 to 5 physically strenuous hands on training sessions."  *Id.* ¶¶ 32–33.  Council Director Fasano knew that Therault was not absent.  *Id.* ¶ 202.  During the COVID-19 pandemic, the Council did not require physical participation to complete training or issue police officer

certifications.  *Id.* ¶¶ 18, 41.

On November 13, 2021, Sergeant Yorke of the Madison Police Department learned that Therault had been injured during training.  *Id.* ¶ 20.  Yorke notified Therault "that she was required to be seen by the Town's Occupational Health," *id.* ¶ 21, and that "he would inform [the Council] of her injury," *id.* ¶ 22.  On November 15, 2021, the Town received a medical note for Therault that indicated that she was restricted to "light duty status, frequent sitting and only occasional standing/walking."  *Id.* ¶ 23.  Yorke learned that Therault had a "possible [m]ensiscus tear" on November 22, 2021.  *Id.* ¶ 24.  At some point following her injury but before her termination, Therault filed a Workers' Compensation claim related to her injury; the town approved the claim. *Id.* ¶ 172.

Although state regulations require the Council to dismiss from its academy probationary candidates who are absent for 40 hours of training, *id.* ¶ 36, the regulations also permit candidates to retake portions of training or repeat entire training sessions, *id.* ¶ 39, 112–13.  *See* Conn. Agencies Regs. § 7-294e-15.  Previously, the Council has permitted male candidates to repeat the training course before being dismissed.  ECF No. 36 ¶¶ 40, 116–18, 189, 201.

On December 6, 2021, Therault notified Yorke that the Council had notified her "that she hit the 40-hour limitation for missed time at the Academy and she may recycle and go through the next scheduled training session to complete her hours."  *Id.* ¶ 25; *see also* id. ¶ 184.  On December 7, 2021, the Council informed Therault that it "was leaning towards recycling Plaintiff's training because of her inability to physically participate in some training activities due to her injury," and Therault informed the Town of this.  *Id.* ¶ 52.  Later that day, however, the Council notified Therault that she "was being dismissed from the Academy" because of the alleged absences.  *Id.* ¶ 37. Council Director Fasano also notified Chief Drumm that Therault "would be removed from the

Academy Session and it would be her agencies [sic] discretion on attending a future academy session." *Id.* ¶ 53; *see also id.* ¶¶ 208–09. On December 8, 2021, Therault notified Yorke that the Council had released her and asked what she should do. *Id.* ¶¶ 26, 42, 54. Yorke told Therault he would "discuss the matter with [] Captain [Race] and Chief [Drumm]." *Id.* ¶ 27; *see also id.* ¶ 54. Drumm "knew or reasonably should have known that . . . there remained ample time" for Therault to retake the training and obtain certification within a year of her hire. *Id.* ¶ 213. That same day, Therault received a letter from Chief Drumm that rescinded her conditional offer of employment as a police officer with the Town. *Id.* ¶¶ 28, 55. On December 17, 2021, Council Director Fasano notified the Town that the Council was dismissing Therault from training, effective the following day, because she had missed more than forty hours of training. *Id.* ¶ 18. Therault alleges that as a result of both her dismissal from the Academy and her termination by the Town, she has suffered "embarrassment, inconvenience, humiliation, reputational damage, loss of earning capacity and potential, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury." *Id.* ¶¶ 45, 57, 59, 63, 65, 108, 125, 133, 195, 205, 215.

The Amended Complaint also alleges that "[o]ver the past decade, every woman officer employed by Madison PD has complained about unequal treatment because of their sex or unethical conduct by colleagues and supervisors who are men." *Id.* ¶ 1. The Amended Complaint describes details of such alleged unequal treatment as to six female police officers between 2009 and 2022. *Id.* ¶¶ 67–103. In particular, the Amended Complaint alleges that Chief Drumm was directly involved in the unequal treatment of at least three of these six officers. *Id.* ¶¶ 73–74, 83–84, 88–89.

B. **Procedural History**

On August 10, 2022, Therault filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging that the Town discriminated against her and denied her a reasonable accommodation because of her knee injury, which resulted in her dismissal. *Id.* ¶ 6; ECF No. 44-2 at 2. The CHRO Complaint indicates that Therault believed the Town violated CFEPA under Connecticut General Statutes § 46a-60(b)(1) and (5), as well as the ADA. ECF No. 44-2 at 3. She also filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 36 ¶ 6. On July 7, 2023, Therault amended her CHRO Complaint, adopting all of the allegations from the previous complaint and adding a paragraph alleging discrimination by the Town on the basis of her gender because the Town "has accommodated other male individuals during [Council] training, but treated me different."[1] ECF No. 44-3 at 2. On August 17, 2023, the CHRO granted Therault a release of jurisdiction to pursue her claims in court, and the EEOC did likewise on August 31, 2023. ECF No. 36 ¶ 6.

Therault brings twelve claims. Against the Council, she brings claims of disability discrimination and failure to accommodate under Title I of the ADA (Count One), the same under CFEPA (Count Three), aiding and abetting the Town in effectuating a discriminatory discharge under CFEPA (Count Four), aiding and abetting disability discrimination and failure to accommodate under CFEPA (Count Five), sex discrimination under Title VII (Count Seven), discrimination in public accommodation under Title II of the ADA (Count Eight), and workers' compensation retaliation in violation of CWCRA (Count Nine). Against the Town, she brings claims of disability discrimination and failure to accommodate under Title I of the ADA (Count

---

[1] The Amended CHRO Complaint also added an allegation that the Town violated the CFEPA provision on denial of public accommodations, § 46a-64, but the Amended Complaint in this case, ECF No. 36, does not bring a claim under this provision.

Two), aiding and abetting disability discrimination and failure to accommodate under CFEPA (Count Five), sex discrimination under Title VII (Count Six), workers' compensation retaliation in violation of CWCRA (Count Nine), and Fourteenth Amendment violations under 42 U.S.C. § 1983 (Count Ten).  She also brings § 1983 claims against Council Director Fasano (Count Eleven) and Chief Drumm (Count Twelve).  In her prayer for relief, she requests compensatory damages, punitive damages, expert witness fees, attorneys' fees, costs, and interest.  ECF No. 36 at 31.

On May 31, 3024, The Town moved to dismiss all claims against it and Drumm for failure to state a claim under Rule 12(b)(6).  ECF No. 44.  On June 3, 2024, the Council moved to dismiss all claims against it and Fasano for failure to state a claim under Rule 12(b)(6), and additionally moved under Rule 12(b)(1) to dismiss Counts One, Three, Four, Five and Nine for lack of subject matter jurisdiction because they are barred by the Eleventh Amendment.  ECF No. 46.  The Council also seeks to preclude Therault from seeking punitive damages and prejudgment interest.  ECF No. 46 at 32–33.  A court is generally not in a position to assess what relief might suit a particular case until after liability is established, usually at trial.  Thus, only where I find the relevant law to foreclose particular types of relief in clear terms will I "dismiss" a particular claim for relief.

## II.  <u>LEGAL STANDARD</u>

To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115

(2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In adjudicating a motion to dismiss under Rule 12(b)(1) on the pleadings, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor" except for "argumentative inferences favorable to the party asserting jurisdiction." *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012).

## III.    DISCUSSION

### A.    Eleventh Amendment as to the Council

The Council argues that it is a state agency, and as such Therault's claims under Title I of the ADA, CFEPA, and the Connecticut Workers' Compensation Act (Counts One, Three, Four, Five, and Nine) are barred by the Eleventh Amendment and state-law sovereign immunity. For the following reasons, I agree that this Court lacks subject matter jurisdiction to adjudicate these claims under the Eleventh Amendment.

#### 1.    Whether the Council is an Arm of the State

The Supreme Court has interpreted the Eleventh Amendment to mean that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are,

effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The Second Circuit, however, has observed that "a claim of Eleventh Amendment immunity will occasion serious dispute only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state." *Woods*, 466 F.3d at 238 (2d Cir. 2006).

Therault argues that it would be premature at this stage to determine whether the Council is an arm of the state entitled to Eleventh Amendment immunity from suit in federal court. ECF No. 50 at 3. I disagree. Whether the Council is an arm of the State of Connecticut is a question of law, not fact.[2] By statute, the Council is a division "within the Department of Emergency Services and Public Protection" (DESPP). Conn. Gen. Stat. § 7-294b. DESPP is a department "within the executive branch of state government."[3] *Id.* § 4-38c. The Council's powers are entirely defined by statute.[4] *Id.* § 7-294d(a). Its leadership and members are appointed by the governor,

---

[2] In instances of complex institutional arrangements, whether an entity is an arm of the state depends on six factors. *Walker v. City of Waterbury*, 253 F. App'x 58, 60–61 (2d Cir. 2007) (summary order) (citing *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)). But courts in this District forgo analysis of these factors and dismiss claims barred by the Eleventh Amendment when there is no factual basis for disputing that a state agency is an arm of the state. *See, e.g.*, *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008); *Patterson v. Connecticut Dep't of Lab. Adm'r*, No. 11-cv-1237, 2012 WL 4484913, at *4 (D. Conn. Sept. 27, 2012).

[3] Courts in this District have dismissed claims against another DESPP division, the Connecticut State Police, upon a finding that they are barred by the Eleventh Amendment. *See, e.g.*, *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 577 (D. Conn. 2016); *Stanley v. Muzio*, No. 07-cv-59, 2007 WL 776666, at *2 (D. Conn. Mar. 13, 2007).

[4] Among these powers is the ability to accept grants and other financial assistance from the private sector, among other sources, Conn. Gen. Stat. § 7-294d(a)(17), which Therault argues makes it "apparent" that the Council is funded "in part" by such sources. ECF No. 50 at 3. This argument, however, ignores that this power is defined by statute. A statute that permits the Council to accept *additional* funding from nongovernmental sources—which the Council must later report to Governor and General Assembly under § 7-294c—does not raise a question of fact as to whether the Council is primarily controlled and funded by the state. *See, e.g.*, *Smith-Crockett v. CT Tech. High Sch.*, No. 18-cv-1640, 2019 WL 13293209, at *7 (D. Conn. Sept. 24, 2019) (finding

among other state officials. *Id.* § 7-294b(b). The Council is thus a creature of statute—there can be no factual dispute about its status for Eleventh Amendment purposes. The Council does not represent "a relatively complex institutional arrangement [that] makes it unclear whether a given entity ought to be treated as an arm of the state." *Woods*, 466 F.3d at 238; *cf. Moore v. University of Kansas*, 124 F. Supp. 3d 1159, 1164–70 (D. Kan. 2015). As a statutorily defined division of a state executive department, the Council is an arm of the state and therefore immune from suit in federal court, unless an exception applies.

### 2. Application to claims

"The Eleventh Amendment bars suits against state agencies unless the state waives its sovereign immunity or it is validly abrogated by Congress." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014). In her opposition to the motion to dismiss, Therault does not argue that Connecticut has waived its immunity in regard to any claim, nor that Congress has abrogated immunity under Title I of the ADA. She argues only that the Council is not eligible for Eleventh Amendment immunity.[5]

#### a. Count One: ADA Title I

Title I of the ADA applies to employment discrimination claims. *See Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) ("[W]e conclude that the [ADA] unambiguously limits employment discrimination claims to Title I."). By now, "[i]t is well settled that states retain their sovereign immunity against discrimination claims brought under Title I of

---

defendant to be arm of the state where branches of state government exercised "significant control" and where it was "funded primarily by the state, rather than municipal-level taxes").

[5] Count Eight of the Amended Complaint does not specify under which legal theory Therault is asserting discrimination in public accommodations. *See* ECF No. 36 ¶¶ 127–34. In her opposition to the motion to dismiss, she confirms that her ADA claims arise under Titles I and II, but she does not dispute that the state has waived its sovereign immunity under Title I, nor that its immunity under Title I was validly abrogated by Congress. ECF No. 50 at 4.

the ADA." *Quadir*, 39 F. Supp. 3d at 536.  Congress has not abrogated Eleventh Amendment immunity to subject the states to suit under Title I of the ADA, *Bd. of Trustees of Univ. of Alabama*, 531 U.S. at 374, and there is no evidence that the State of Connecticut has waived the protections of the Eleventh Amendment in suits brought by private individuals under the ADA.  Therault's Title I claims against the Council are therefore barred by the Eleventh Amendment and must be dismissed.

   b. <u>Counts Three, Four, and Five: CFEPA</u>

   Connecticut "has clearly waived immunity to claims brought under CFEPA as to cases brought in the Connecticut state courts.  Conn. Gen. Stat. § 46a–99.  However, . . . there is nothing in the Connecticut General Statutes that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims."  *Lyon v. Jones*, 168 F. Supp. 2d 1, 6 (D. Conn. 2001); *see also Daniels v. Connecticut*, No. 12-cv-93, 2015 WL 4886455, at *19 (D. Conn. Aug. 17, 2015) (recognizing same).  The Supreme Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n. 9 (1984).  Moreover, the provision that creates the cause of action for CFEPA violations only contemplates suits being brought in Connecticut's "superior court," Conn. Gen. Stat. § 46a-100, which does not lead to the conclusion that "CFEPA constitutes the type of 'unequivocal' waiver of immunity for suits filed in federal court that *Pennhurst* requires."  *Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 167 (D. Conn. 2013).  "[B]ecause Connecticut has not consented to suit in federal court under CFEPA," *Wagner v. Connecticut Dep't of Correction*, 599 F. Supp. 2d 229, 237 (D. Conn. 2009), Therault's CFEPA claims against the Council under Connecticut General Statute § 46a-60—Counts Three,

Four, Five—are likewise barred by the Eleventh Amendment and must be dismissed.[6]

c.  Count Nine: CWCRA

Likewise, the Connecticut Workers' Compensation Retaliation Act (CWCRA), Conn. Gen. Stat. § 31-290a, provides that an employee who is discharged or discriminated against for filing a claim for exercising his or her rights under the Act may: "(1)[b]ring a civil action *in the superior court* for the judicial district where the employer has its principal office . . . ; or (2) file a complaint with the chairman of the Workers' Compensation Commission."  Conn. Gen. Stat. § 31–290a(b) (emphasis added). "This provision contemplates only an action brought in state court or a complaint filed with a state commission; it does not explicitly contemplate suit in federal court. Thus, like the CFEPA, the CWCRA does not contain an unequivocal waiver of immunity to suit in federal court." *Lee*, 939 F. Supp. 2d at 168.  Because Connecticut has not consented to suit in federal court under the CWCRA, Count Nine against the Council is dismissed.

Because I dismiss Counts One, Three, Four, Five, and Nine against the Council under Rule 12(b)(1), I do not reach the arguments that they should also be dismissed under Rule 12(b)(6).

**B.  Remaining Discrimination Claims Against the Council**

Therault brings two further federal discrimination claims against the Council: denial of public services under Title II of the ADA in Count Eight, and sex discrimination under Title VII of the Civil Rights Act of 1964 in Count Seven.  The Council seeks dismissal for failure to state a claim under Rule 12(b)(6), arguing that (1) Therault has not alleged facts showing that she was excluded from participation in the Council's services, and (2) that her allegations are insufficient to state a plausible Title VII claim.  I conclude that Therault plausibly states a Title II ADA claim

---

[6] Because I find that the Eleventh Amendment bars the CFEPA claims against the Council, I do not reach the Council's argument that the Plaintiff has no right to a jury trial under CFEPA. *See* ECF No. 46-1 at 33–35.

but fails to state a plausible Title VII claim.

### 1. Count Eight: ADA Title II [7]

Therault alleges that the Council violated Title II of the ADA when it denied her meaningful access to its police officer certification services when it denied her reasonable accommodations. ECF No. 36 at 129–30. Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a Title II claim, Therault must allege facts demonstrating "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir. 2003)). The Council does not dispute for the purposes of this motion that Therault is a qualified individual. Rather, it argues that she was not "excluded" from participation because she attended and participated in all activities that were not physically demanding, and that she was dismissed "in accordance with state regulations" rather than because of her disability. ECF No. 46 at 21. I disagree.

Even if Therault's limited participation could be considered "participation" for the purposes of Title II, she alleges that a public entity otherwise discriminated against her because of

---

[7] The Council does not explicitly seek to dismiss Therault's Title II ADA claim on Eleventh Amendment grounds, and so I need not address that defense here. In any event, determining if the Council is entitled to sovereign immunity against Therault's Title II claim would require a more expansive record than is currently before the Court on this motion to dismiss. Whether the Court has subject-matter jurisdiction to adjudicate Count Eight may be raised at any point. *See* Fed. R. Civ. P. 12(b)(1).

her disability.  She alleges that the Council "discriminatorily utilized" her alleged absences from training, misrepresenting her as absent when she was present, in order to trigger the state regulations mandating her dismissal.  ECF No. 36 ¶¶ 35–36, 131.  She alleges that her dismissal denied her the benefits of the Council's police officer certification services.  *Id.* ¶¶ 13–14, 129, 132.  And she alleges that the Council "refused and/or failed to make reasonable accommodations so that Plaintiff could benefit from its program or services."  *Id.* ¶ 130.  With these allegations, Therault plausibly states a claim that the Council, a public entity, violated Title II of the ADA.  *See* 42 U.S.C. § 12132.  The motion to dismiss Count Eight is denied.[8]

### 2.  Count Seven: Sex Discrimination under Title VII against the Council [9]

Therault also brings a claim for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  To state a cognizable claim of discrimination under Title VII, a plaintiff must plead facts supporting a plausible inference that (1) "the plaintiff is a member of a protected class," (2) "was qualified," (3) "suffered an adverse employment action," and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (citations omitted).  The Council does not contest that the Amended Complaint pleads facts plausibly supporting an inference that

---

[8] The Supreme Court has found that punitive damages are not available under the ADA and the Rehabilitation Act in private suits.  *Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002).  As such, Therault may not pursue punitive damages against the Council under Count Eight.  Because prejudgment interest is "presumptively available to victims of federal law violations," *Worthington v. City of New Haven*, No. 94-cv-609, 1999 WL 958627, at *17 (D. Conn. Oct. 5, 1999) (citing *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992)), I decline to dismiss claims for prejudgment interest under Count Eight.

[9] Congress has validly abrogated the State's immunity with respect to claims arising under Title VII.  *See Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigative, Inc.*, 598 U.S. 339, 350 (2023). So the Eleventh Amendment does not bar Therault's Title VII claim.  *Idlibi v. Connecticut Dep't of Pub. Health*, No. 23-cv-353, 2024 WL 920728, at *3 (D. Conn. Mar. 4, 2024), *aff'd*, No. 24-720, 2024 WL 4645698 (2d Cir. Nov. 1, 2024).

she is a member of a protected class, is qualified, and suffered an adverse employment action.[10]

Rather, the Council argues that Therault has failed to allege sufficient facts giving rise to a minimal

inference that the Council acted with discriminatory intent.  I agree.

"[A]s concerns the fourth prong, 'a plaintiff need only give plausible support to a minimal

inference of discriminatory motivation.'"  *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20

(2d Cir. 2015) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

"An inference of discrimination can arise from circumstances including, but not limited to . . . the

more favorable treatment of employees not in the protected group; or the sequence of events

leading to the plaintiff's discharge."  *Littlejohn*, 795 F.3d at 312.  A plaintiff seeking to raise an

inference of discrimination via disparate treatment 'must show she was similarly situated in all

material respects to the individuals with whom she seeks to compare herself.'"  *Berroa v. Dep't of*

*Developmental Servs.*, No. 19-cv-867, 2020 WL 12863317, at *10 (D. Conn. Sept. 17, 2020)

(quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation and internal

quotation marks omitted).  "What constitutes 'all material respects' . . . must be judged based on

(1) whether the plaintiff and those he maintains were similarly situated were subject to the same

workplace standards and (2) whether the conduct for which the employer impose discipline was

of comparable seriousness."  *Id.* (quoting *Graham*, 230 F.3d at 40).

Therault attempts to raise an inference of discrimination via disparate treatment by arguing

that the Council denied her accommodations—such as opportunities to retake examinations,

---

[10] Although the Council disputes that it is Therault's employer, it does not contest that Therault can state a Title VII claim against it as a joint labor management committee. *See* 42 U.S.C. § 2000e–2(d) ("It shall be unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.")

perform light-duty tasks, and repeat entire training programs—that it previously provided to male recruits.[11]  ECF No. 50 at 6–7 (citing ECF No. 36 ¶¶ 116–19).  But Therault has not alleged that she was similarly situated to these male recruits in all material respects.  The only alleged similarity between Therault and these male recruits is that they shared a common status as "probationary candidates."  ECF No. 36 ¶¶ 116–19.  But even if it is plausible to assume that all probationary candidates were subject to the same standards, Therault offers no facts to support an inference that the male recruits engaged in comparable conduct.  She does not, for example, allege whether these comparators were similarly injured during training, were able to perform some course examinations, were physically present for examinations, were marked absent, or faced dismissal for similar reasons.  As alleged, the Amended Complaint would include as a comparator every male probationary recruit who ever received an accommodation from the Council, regardless of circumstance.  Such sweeping allegations are insufficient to raise an inference of discrimination.  *See, e.g.*, *Berroa*, 2020 WL 12863317, at *11 ("Even if it is reasonable to infer that employees who share job titles are subject to the same workplace standards, the Third Amended Complaint alleges no facts supporting an inference that the three Residential Program Supervisors named in the Third Amended Complaint engaged in similar conduct to Berroa."); *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 129 (N.D.N.Y. 2019) (finding allegation that unnamed similarly situated employees did not face same adverse employment action to be a "naked assertion[ ] devoid of

---

[11] Contrary to Therault's assertion in the opposition brief, the Amended Complaint does not allege that "other female recruits who were injured or had difficulty meeting physical fitness requirements were strictly disciplined."  ECF No. 50 at 7.  Indeed, the Amended Complaint makes no mention whatsoever of other female recruits.  Also in her brief, Therault alleges, without citation, that the complaint provides "specific examples of how the Council treated male and female recruits differently when applying disciplinary and training standards."  *Id.*  The Amended Complaint contains no examples outside of Therault herself beyond the vague reference to the Council's "history" of providing accommodations to male recruits.  ECF No. 36 ¶¶ 116–19.

further factual enhancement") (citing *Winston v. City of New York*, No. 12-cv-395, 2013 WL 4516097, at *2–*3 (E.D.N.Y. Aug. 23, 2013) ("Winston makes vague, general allegations that other male employees were treated differently, but fails to identify any individuals or claim that they were similarly situated in all material respects.")); *Howard v. MTA Metro–N. Commuter R.R.*, 866 F. Supp. 2d 196, 208 (S.D.N.Y. 2011) ("[T]o show that similarly situated individuals were treated differently . . . it is insufficient to offer little more than conclusory statements or sweeping allegations unsupported by admissible evidence.")).  I conclude that Therault fails to plead facts giving rise to a minimal inference of discriminatory motivation.  Count Seven is dismissed.

### C.  Discrimination Claims against the Town of Madison

Therault alleges that her employer, the Town, unlawfully discriminated against her because of her disability under Title I of the ADA (Count Two) and because of her sex under Connecticut's fair employment law (Count Six).

#### 1.  Count Two: Disability Discrimination under the ADA

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability.  42 U.S.C. § 12112(a).  A plaintiff claiming disability discrimination under the ADA must plausibly allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability."  *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  The Town contends that Therault has not adequately alleged the second and third elements, that she is disabled within the meaning of the ADA, and that she was otherwise qualified to perform her position as a police officer.  I disagree.

a.  Disabled Under the ADA

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Therault alleges that the torn meniscus she suffered during training at the Council's academy "reasonably qualified as a disability that necessitated accommodations."  ECF No. 36 ¶ 50.  The Town argues that Therault "has failed to adequately allege that she was substantially limited in a major life activity."  ECF No. 44-1 at 15.

As relevant here, "major life activities" include "walking, standing, sitting, reaching, lifting, bending . . . and working."  29 C.F.R. § 1630.2(i)(1).

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

29 C.F.R. § 1630.2(j)(1)(2).  "To determine whether a major life activity is substantially limited by an impairment, we consider, among other factors, 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact.'"  *Ibela v. Allied Universal*, No. 21-1995-CV, 2022 WL 1418886, at *1 (2d Cir. May 5, 2022) (citing 29 C.F.R. § 1630.2(j)(2)).  "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

Therault alleges that her knee injury "rendered her medically restricted from doing physical activity beyond standing and walking," ECF No. 36 ¶ 16, that her doctor advised restrictions including "only occasional standing/walking," *id.* ¶ 23, and that she could not participate in

undertaking the physically demanding aspects of the Council's certification program, *id.* ¶ 52. These allegations go to the severity of the impairment, in that the injury "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(2). Although Therault does not allege any facts related to the expected duration of her injury or whether she expected any permanent or long-term impact, a short-term injury can qualify as an actionable disability under the ADA if it is sufficiently severe. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, *92–*93 & n.5 (2d Cir. 2021); *Veldran v. Dejoy*, 839 F. App'x 577, 579 (2d Cir. 2020). When broadly construing the question in favor of expansive coverage, I find that the Amended Complaint contains sufficient facts to plausibly allege that Therault's injury was sufficiently severe to substantially limit her ability to stand and walk, or to participate in other physical activity such as lifting. As such, Therault has adequately pleaded that she qualifies as disabled within the meaning of the ADA.

### b. Otherwise Qualified to Perform

The Town also argues that Therault has not shown she is qualified for her position because she does not hold the requisite certification. ECF No. 44-1 at 16–18. An employee is "otherwise qualified" for a position when he "is able to perform the essential functions of that job, either with or without a reasonable accommodation." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

In support of its argument, the Town cites *Dancause v. Mount Morris Central School District*, No. 13-CV-6019, 2013 WL 2946063, at *6–*7 (W.D.N.Y. June 14, 2013), *aff'd*, 590 F. App'x 27 (2d Cir. 2014), in which the district court granted the defendant school district's motion to dismiss ADA claims because the plaintiff lacked the proper teaching certification required by law. In that case, however, the plaintiff did not allege that her alleged disability "in any way

interfered with her ability to obtain the proper certification." *Id.* at *1.  In contrast, Therault alleges that her disability prevented her from obtaining the certification from the Council.  ECF No. 36 ¶ 129 ("[The Council] as a direct result of Plaintiff's disability denied her the benefits of its program and services").  She also alleges that the Council acted as the town's agent for the purpose of "exercis[ing] the power of control over the Madison Police Department's workforce in regards to terms and conditions of employment."  *Id.* ¶ 4.  Also unlike the claims in *Dancause*, Therault alleges that her employer's agent's alleged discriminatory employment practice and failure to accommodate denied her the *opportunity* to obtain that certification, *id.* ¶¶ 35–37, and that certification could be obtained *only* through her employer's alleged agent, *id.* ¶¶ 14, 31.  When the employer controls the only means of certification, dismissing a discrimination claim because of the plaintiff's lack of certification would allow the employer to discriminate with impunity and provide a means to circumvent the purpose of the ADA.  *See Giugliano v. FS2 Cap. Partners, LLC*, No. 14-cv-7240, 2015 WL 5124796, at *9 (E.D.N.Y. Sept. 1, 2015) (finding that where an employer's "maneuver would work to preclude an employee from pleading an essential element of a discrimination claim, the result . . . would be an unjustifiable limit on the employee's ability to avail himself of the protections afforded by the federal anti-discrimination laws").

     *Dancause* is further distinguishable because even as an uncertified recruit, Therault *already was* legally performing the duties of a police officer in Connecticut.  *See* Conn. Agencies Regs. § 7-294e-1(a)(2) (defining a "probationary candidate" as "a police officer").  Unlike the teaching job in *Dancause*, certification is not a threshold requirement to Therault's position.  Under the law, Therault had one year to obtain the requisite certification, Conn. Gen. Stat. § 7-294d(a)(5), but she alleges that she was terminated before this time expired, ECF No. ¶¶ 12, 28, 50.  It would be premature at this stage to conclude, based solely on her lack of Connecticut certification, that she

was not "qualified" under the ADA to work as a police officer for the Town, at least for the year before she was required by law to obtain certification. *See Giblin v. College*, No. 20-CV-477, 2021 WL 781363, at *8–*9 (N.D.N.Y. Mar. 1, 2021) (distinguishing *Dancause* where teacher's lack of a degree did not render her unqualified for at least the first year of her employment); *cf. Hernandez-Cruz v. Fordham Univ.*, 521 F. Supp. 1059 (S.D.N.Y. 1981) (finding plaintiff not qualified for position for which a degree was a threshold requirement). For these reasons, I find *Dancause* to be inapposite here.

Certification aside, Therault has pleaded facts demonstrating that she was able to perform the essential functions of a police officer generally, as she had previously worked "as a federal police officer with Amtrak Police and was trained at the Federal Law Enforcement Training Center Academy and commissioned in Rhode Island and Massachusetts." ECF No. 36 ¶ 7. That is enough, as a fact-specific inquiry is improper on a motion to dismiss. *Hoffman v. City Coll. of New York*, No. 20 CIV. 1729, 2021 WL 1226498, at *10 (S.D.N.Y. Mar. 30, 2021) ("Ultimately, these fact-intensive questions are reserved for later proceedings. All that [a plaintiff] must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."). Therault has pleaded the availability of a plausible accommodation, namely permitting her "to attend a future Academy training session upon recovery from her injuries," ECF No. ¶ 196, which is permitted under state regulations. *See* Conn. Agencies Regs. § 7-294e-15(b)(3) ("In those instances where a re-test is not available, or is failed, probationary candidates shall be required to fully repeat and pass the entire training course or be dismissed.").

For these reasons, the motion to dismiss Count Two is denied.

## 2.  Count Six: Sex Discrimination Under CFEPA

The Town also moves to dismiss Count Six, alleging discrimination on the basis of sex in violation of the of the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(b)(1).[12]  ECF No. 44 at 5–9.  The Town argues only that the sex discrimination claim was untimely filed with the CHRO because Therault added the claim outside the 300-day window of the alleged adverse employment action and the claim does not relate back to the original CHRO Complaint alleging disability discrimination.  *Id.* at 5–6.  Therault does not contest that the CHRO amendment alleging sex discrimination was filed outside the window but argues that it relates back to the original claim.  ECF No. 49 at 2–4.  I agree with Therault that the sex discrimination claim relates back to the original CHRO Complaint and so was timely filed.

The Regulations of Connecticut State Agencies state that amendments to CHRO complaints "alleging additional facts that constitute discriminatory practices which are reasonably like or related to or growing out of the allegations of the original complaint, . . . *including additional protected class status* . . . , relate back to the date the complaint was first received." Conn. Agencies Regs. § 46a-54-38a(b) (emphasis added).  "[I]n the cases in which we have determined that an amendment does not relate back to an earlier pleading, the amendment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding [on] previous allegations." *Grenier v. Commissioner of Transportation*, 51 A.3d 367 (Conn. 2012).

Here, Therault's original CHRO Complaint claims that the defendant violated, inter alia, General Statutes § 46a-60(b)(1), which penalizes discrimination on the basis of both sex and

---

[12] The Amended Complaint erroneously cites to Connecticut General Statue § 46a-60(a)(1).  The relevant statutory text formerly at subsection (a) moved to subsection (b) in 2017.  *See* 2017 Conn. Legis. Serv. P.A. 17-118 (H.B. 6668).

physical disability.  ECF No. 44-2 at 3.  Thus, the Amended CHRO Complaint, which alleges the additional protected class status of sex, arises from the statutory violations alleged in the original CHRO Complaint.  *See, e.g.*, *Wright v. Teamsters Local 559*, 1 A.3d 207, 211 (Conn. App. 2010) (as § 46a-54-38a(b) permits amendments alleging additional protected class status, "there can be no doubt in this case that the allegations of age discrimination relate back to the race and color allegations in the original commission complaint"); *Brooks v. Paine's Bros., LLC*, No. CV094042587S, 2010 WL 2682440, at *2 (Conn. Super. Ct. May 25, 2010) (finding disability discrimination claim in amended CHRO complaint related back to original claim of gender discrimination under § 46a-60).  The alternate theory of liability here "grow[s] out of the allegations of the original complaint," because both the sex and disability discrimination claims relate to the same event—Therault's termination following her dismissal from the police academy. *See Wright*, 1 A.3d at 211 (allegations in amended complaint related to additional protected class, like the original discrimination claim, "stemmed from the defendant's replacement of the plaintiff").[13]

For these reasons, I find the Amended CHRO Complaint relates back to the original CHRO Complaint and was therefore timely filed.  The Town's motion to dismiss Count Six is denied.

### D.  Count Five: Aiding and Abetting Discrimination against the Town

The Town next moves to dismiss Count Five, which alleges that both the Town and the

---

[13] The Town's arguments to the contrary are unavailing.  In *Commission on Human Rights and Opportunities v. City of Hartford*, 50 A.3d 917, 936 n.21 (Conn. 2012), upon which the Town relies, the additional theory of liability stemmed from an act of retaliation distinct from the operative facts underlying the original theory. The allegation of additional facts does not create a new set of operative facts and is not a bar to the application of the relation back doctrine when the new facts amplify and expand upon the facts alleged in the original complaint. *See* Conn. Agencies Regs. § 46a-54-38a(b); *Wright*, 1 A.3d at 211 (citing *Alswanger v. Smego*, 776 A.2d 444 (Conn. 2001)).

Council violated CFEPA by aiding and abetting the other's disability discrimination and failure to accommodate. ECF No. 36 at 61–66. I have already found that the Eleventh Amendment bars this claim against the Council. For the following reasons, I also find Therault fails to state a claim against the Town.

Under the CFEPA, it is a discriminatory practice for "an employer, by the employer or the employer's agent, . . . to discharge from employment any individual or to discriminate against any individual," Conn. Gen. Stat. § 46a-60(b)(1), and (2) "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so," *id.* § 46a-60(b)(5). "The law in Connecticut is clear that while an individual employee may be held liable for aiding and abetting his employer's discrimination, an employer cannot be liable for aiding and abetting its own discriminatory conduct." *Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008).

Therault alleges "the Town aided and abetted [the Council]'s discriminatory practices against Plaintiff by ratifying and adopting [the Council]'s actions without engaging in any interactive process or providing accommodations before terminating her." ECF No. 49 at 6. But she also alleges that in discriminatorily dismissing her from the training program, "[the Council] was acting in the capacity of a Joint Labor Management Committee and/or as the Town's agent in providing the necessary, mandated and required training for the Plaintiff to maintain her position as a Police Officer with the Town of Madison."[14] ECF No. 36 ¶ 61. In alleging that the Council

---

[14] The Town does not contest that it was acting in the capacity of a joint labor management committee. *See supra* n.10. Unlike Title VII, however, the CFEPA does not contemplate claims for discriminatory employment practices conducted by a joint labor management committee, but only those by the employer or the employer's agent. Conn. Gen. Stat. § 46a-60(b)(1). As such, to state a claim that the Town aided and abetted the Council's discriminatory employment practice, the Council must be either Therault's employer or its agent. The Complaint does not allege that the Council was the town's employer or joint employer. *Cf.* ECF No. 36 ¶ 3 (defining the Town

was operating as the Town's agent, she claims that any discrimination by the Council was also the Town's under § 46a-60(b)(1). Therault cannot state a claim under § 46a-60(b)(5) that the Town aided and abetted conduct which, through its agent, was its own. *See Farrar*, 537 F. Supp. 2d at 356–57 ("The proper remedy for the [employer's] conduct, however, lies in the direct claims of discrimination he has raised in . . . [the] complaint. [The employer] cannot have discriminated against him and, at the same time, aided and abetted itself in discriminating against him."). Count Five against the Town must be dismissed.

### E.  Count Nine: Worker's Compensation Retaliation against the Town

The Town also moves to dismiss Count Nine, which alleges that both the Town and the Council violated the Connecticut Workers' Compensation Retaliation Act (CWCRA). ECF No. 36 at 171–78. I have already found that the Eleventh Amendment bars this claim against the Council. For the following reasons, I find that Therault plausibly states a CWCRA claim against the Town.

The CWCRA prohibits an employer from discharging, causing to be discharged, or discriminating against any employee "because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provision of this chapter." Conn Gen. Stat. § 31-290a(a). To establish a prima facie case of discrimination under § 31-290a, "the complainant must establish (1) that [the plaintiff] has filed a claim for workers' compensation benefits or otherwise exercised his rights under the statute, (2) there was an adverse employment action taken against [her], and (3) there was a causal connection between

---

as "an employer" under CFEPA), *with* ¶ 4 (defining the Council as "an agent and/or Joint Labor-Management Committee" of the Town). Therefore, the only theory under which Therault could state a CFEPA aiding-and-abetting claim against the Town is if the Council was operating as the Town's agent.

the protected activity and the adverse employment action." *Muoio v. Costco Wholesale Corp.*, No. 13-cv-44, 2015 WL 222160, at *14 (D. Conn. Jan. 14, 2015); *see Callender v. Reflexite Corp.*, 70 A.3d 1084, 1093 (Conn. App. 2013), *cert. denied*, 75 A.3d 32 (Conn. 2013). "A causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991). At the pleading stage, a plaintiff "must allege facts providing 'plausible support to a minimal inference of [retaliatory] motivation.'" *White v. Smiths Med. ASD, Inc.*, No. 14-cv-01501, 2016 WL 5219450, at *2 (D. Conn. Sept. 20, 2016) (quoting *Littlejohn*, 795 F.3d at 311).

Therault alleges a temporal proximity between the filing of her workers' compensation claim and a change in her employer's position that resulted in an adverse employment action, which is sufficient to state a plausible claim of retaliation under the statute. Specifically, Therault alleges the following: As a condition of employment as a police officer, she was required by law (Conn. Gen. Stat. § 7-294d(a)(5)) to obtain certification within one year of her hire. ECF ¶¶ 13, 30, 171. She was allegedly hired on September 8, 2021. *Id.* ¶¶ 12, 171. After her November 13, 2021 injury, she filed a workers' compensation claim. *Id.* ¶¶ 172–73. The Council notified the Town that it was at the Madison Police Department's "discretion to allow the Plaintiff to attend a future academy session." *Id.* ¶ 209. Although the Town approved the workers' compensation claim, *id.* ¶ 173, the Town terminated her employment less than a month after her injury and subsequent claim, on December 8, 2021, *id.* ¶ 176, even though nine months remained in the allotted time for her to obtain Council certification as required by law for continued employment.

The temporal proximity from the workers' compensation claim to her termination, when

considered with the allegation that months remained for her to obtain police certification from the Council before her termination would be required by law, is sufficient to raise a minimal inference that the Town acted with a retaliatory motivation in response to the filing of her worker's compensation claim. *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 233, 240 (D. Conn. 2006) (13-month gap not too temporally disconnected to support an inference of retaliation where there is other evidence of retaliation). Thus, the motion to dismiss Count Nine is denied.

### F.  Claims under 42 U.S. § 1983

Finally, the Defendants seek to dismiss Therault's claims under 42 U.S.C. § 1983 against the Town (Count Ten, ECF No. 36 ¶¶ 179–96), Police Chief Drumm (Count Twelve, *id.* ¶¶ 206–15), and Council Director Marc Fasano (Count Eleven, *id.* ¶¶ 197–205) for violations of the equal protection and due process clauses of the Fourteenth Amendment.

#### 1.  Procedural Due Process Violation

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012). Therault does not allege that she had a property interest in her probationary employment.[15]  Rather, she alleges that the Town, Chief Drumm, and Director Fasano deprived her of a liberty interest in her reputation and her chosen profession. *See* ECF Nos. 36 ¶¶ 192–93, 49 at 15–16, 50 at 9–10. I find that Therault states a plausible procedural due process claim only against Director Fasano.

---

[15] Therault's potion was probationary before she obtained Council certification. *See* Conn. Agencies Regs. § 7-294e-1(a)(2) (defining "probationary candidate" as "a police officer who . . . has not satisfactorily completed the training requirements"). "Where state law defines an employment position as probationary, the employee lacks a legal claim of entitlement and therefore lacks a property interest in the expectation of continued employment." *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996).

To state a procedural due process claim based on a termination from government employment, a plaintiff must satisfy three elements:

> "First, the plaintiff must . . . show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity. . . . Second, a plaintiff must prove these stigmatizing statements were made public. Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment."

*Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citations, internal quotation marks, and emphasis omitted). Such claims are referred to as "stigma-plus claims." *Id.*

### a. Counts Ten (the Town) and Twelve (Chief Drumm)

Therault argues in her opposition to the Town and Chief Drumm's motion to dismiss, without providing specific citations, that the Amended Complaint alleges that Chief Drumm, on behalf of the Town, issued Plaintiff a termination letter and public statement indicating that she failed to meet training standards. The Amended Complaint, however, mentions only that Therault "received a letter from Chief John 'Jack' Drumm rescinding Plaintiff's conditional offer of employment as a police officer with the Town of Madison," ECF No. 36 ¶ 28, and that the fact of her termination was "of public record," *id.* ¶ 193. The Amended Complaint makes no allegations regarding the content of the letter from which the Court could infer that it was stigmatizing to Therault's reputation, and the Amended Complaint does not allege that the letter (rather than the mere fact of Therault's termination) was made public. Therault has thus failed to adequately plead a stigma-plus claim against either Chief Drumm or the Town. Claims of a violation of procedural due process under Counts Ten and Twelve are dismissed.

### b. Count Eleven: Director Fasano

Therault, however, plausibly states a claim under Count Eleven that Director Fasano issued a stigmatizing statement about her that deprived her of a liberty interest. The Amended Complaint

alleges that "Fasano notified the Town that due to Plaintiff missing in excess of forty (40) hours of [Council] training . . . Plaintiff was dismissed" from Council training, ECF No. 36 ¶ 19—despite Fasano's alleged knowledge "that Plaintiff was not absent for over Forty (40) hours of training while attending the Academy," *id.* ¶ 202. The Amended Complaint then also alleges that "[a]s a result of [the Council]'s notification to MPD that Plaintiff was dismissed from the Academy due to attendance, the MPD immediately terminated Plaintiff's employment." *Id.* ¶ 44. It is plausible that a knowingly false statement from the police academy director about a police recruit's failure to attend mandatory training could call into question that recruit's "good name, reputation, honor, or integrity." *Segal*, 459 F.3d at 212. The Amended Complaint alleges Fasano made the statement publicly to Chief Drumm and in close temporal proximity to the plaintiff's dismissal from government employment. ECF No. 436 ¶¶ 19, 208. These allegations are sufficient to state a stigma-plus claim. The motion to dismiss Count Eleven is denied.

### 2. Equal Protection Violation

#### a. Count Ten: The Town

A municipality is liable under Section 1983 only "when execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision . . . .

*Sherman v. Platosh*, No. 15-cv-352, 2016 WL 146431, at *2–*3 (D. Conn. Jan. 12, 2016) (quoting

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)). Therault argues that

she has plausibly stated a *Monell* claim under the first three theories. ECF No. 49 at 11–13.

Therault's first theory, that the Town had an unwritten policy or custom of ratifying the

Council's discriminatory practices against female recruits, fails because she does not allege that

the Defendants' practices were discriminatory against any female recruit outside of herself. "Proof

of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*,

unless proof of the incident includes proof that it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality). The Amended Complaint makes no

mention of any other female recruit, *see supra* n.11, and the only support for an official

discriminatory custom or policy that Therault proffers is her own treatment. *See* ECF No. 36 ¶¶

39, 119–20, 124, 186, 188, 198–99. These allegations are insufficient to demonstrate the existence

of a policy or custom that caused Therault to be deprived of a constitutional right. *See, e.g.*, *Nguedi*

*v. Caulfield*, 813 Fed. App'x 1, 3 (2d Cir. 2020) ("While Nguedi points to his own treatment as

evidence of a custom, a single case is insufficient to establish the existence of such a practice").

Therault's second theory fails because, even assuming that Chief Drumm is a municipal

policymaker responsible for the alleged policy or custom, Therault only offers conclusory

assertions—absent any supporting facts or examples—of the existence of such a policy or custom.

"[G]eneral and conclusory allegation[s]" of an unconstitutional policy or custom are insufficient

to state a *Monell* claim. *Littlejohn*, 795 F.3d at 312. In any event, the Amended Complaint fails

to allege any other instance of the Town ever applying such a policy to the dismissal of a recruit

outside of Therault.

Therault's third argument, that the Amended Complaint alleges a "widespread practice of gender discrimination" generally, ECF No. 49 at 13, fails to state a *Monell* claim because Therault does not articulate any *consistent* practice from the disparate allegations sprinkled throughout the Amended Complaint.[16]  These allegations are too dissimilar for me to draw a connection to any "consistent" practice in the Madison Police Department "of which a supervising policy-maker must have been aware," *Brandon*, 705 F. Supp. 2d at 276, or conclude, as Therault argues, that they "indicate a systemic pattern so manifest as to imply the constructive acquiescence of senior policy-making officials."  ECF No. 49 at 13.  General allegations that Madison PD has frequently subjected female officers to various forms of discrimination do not by themselves demonstrate that the department has a *policy or custom* of discrimination against female officers under *Monell*.  *See Condon v. Town of Brookfield*, No. 23-cv-695, 2024 WL 3873707, at *8 (D. Conn. Aug. 20, 2024) (dismissing *Monell* claim where "Plaintiffs allege only vaguely that certain policies, practices, rules, or customs exist," but where "[n]o specific rules, policies, practices, or customs are alleged, nor is a pattern of similar violations").

For these reasons, the equal protection violation claim under Count Ten is dismissed.

     b. <u>Count Twelve: Chief Drumm</u>

Therault plausibly states an equal protection claim against Chief Drumm in his individual

---

[16] The Amended Complaint alleges that the Madison Police Department "has a long history of treating its women police officers differently from officers who are men," ECF No. 36 ¶ 1, and provides the following examples of allegedly discriminatory treatment: Officer Rist-Brown was terminated as retaliation for whistleblowing, *id.* ¶ 72; Officers Alonso and Hewes faced disability discrimination based on their pregnancies as well as FMLA violations and hostile work environments after their pregnancies, *id.* ¶¶ 73–78, 87–100; Officer Blackwell and Sergeant Lauria were denied assignments based on their sex, *id.* ¶¶ 79–86, 102; Officer Pucillo endured sexual harassment, *id.* ¶ 102; Pucillo and Lauria were terminated because of their gender, *id.*

capacity under a theory of selective enforcement.[17]   Under this theory, a plaintiff must allege facts

showing that: (1) she was treated differently from similarly situated individuals and (2) that such

selective treatment was based on impermissible considerations.   *Diesel v. Town of Lewisboro*, 232

F.3d 92, 103 (2d Cir. 2000)).   Therault compares her circumstances to those of Sergeant Michael

Guera, a male officer in the Madison Police Department, who, like Therault, was "injured . . . , on

workers' compensation[,] and was incapable of performing his official police duties for an

extended period of time."   ECF No. 36 ¶ 106.   This is sufficient to allege that the plaintiff and

Guera were similarly situated under a selective enforcement theory because their circumstances

"bear a reasonably close resemblance."   *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019).   I

cannot infer from a difference in rank alone that Therault and Guera were subject to different

performance evaluation and discipline standards or were not otherwise similarly situated.[18]

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109 n.7 (2d Cir. 2010) ("Although an employee's

position is relevant to the analysis, employees need not be of the exact same rank to be considered

'similarly situated.'").   Therault has also alleged that the material conduct was comparable—both

police officers were injured and unable to work, but only Therault was terminated.   Therault's

---

[17] The Amended Complaint does not specify whether the claims against Chief Drumm are brought
against him in his personal or individual capacity.   To the extent they are in his official capacity,
the Court considers these claims in the context of the *Monell* claim against the Town.   *See Seri v.
Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008) ("Section 1983 claims against
municipal employees sued in their official capacity are treated as claims against the municipality
itself.   Therefore, in order to assert a viable claim against a municipal employee in his official
capacity, the plaintiff must have a viable *Monell* claim against the municipality.") (citations
omitted).   As I have dismissed the § 1983 claims against the Town, any § 1983 claim against Chief
Drumm in his official capacity is also dismissed.
[18] Therault and Guera were both police officers.   *See* Conn. Agencies Regs. § 7-294e-1(a)(2)
(defining a "probationary candidate" as "a police officer who, having satisfied pre-employment
requirements, has commenced employment with a law enforcement unit, but has not satisfactorily
completed the training requirements").   On the record before me, the sole difference between
certified officers and probationary candidates is that the latter have one year from their hire dates
to obtain certification.   *Id.* § 7-294d(a)(5); ECF No. 36 ¶¶ 13, 30, 49, 171, 213.

dismissal from the Council's academy is immaterial at this stage because the Amended Complaint alleges that dismissal from the academy did not mandate her termination when "there remained ample time for her to" complete academy training and obtain her certification in the time required by law.  ECF No. 36 ¶ 213.

Therault also plausibly alleges that the difference between Chief Drumm's treatment of her as compared to Guera was based on Chief Drumm's impermissible consideration of the police officers' sex.    The Amended Complaint alleges that Chief Drumm denied Therault accommodations because of her sex, *id.* ¶¶ 210–12, after having previously denied two other female officers' requests for accommodations based on their sex, *id.* ¶¶ 73–74, 88–89.  These allegations are sufficient to plausibly state a claim that Chief Drumm's disparate treatment of Therault as compared to a similarly situated male officer was based on the impermissible consideration of her sex.  Thus, the motion to dismiss Count Twelve is denied.

### c.  Count Eleven: Director Fasano

Therault, however, fails to present any valid comparator who was subject to the alleged discriminatory conduct of Council Director Fasano.  As described above, the Amended Complaint does not refer to any other female recruits who attended the Council's training academy and does not identify any male trainees.  ECF No. 36 ¶ 116–19.  Just as naked assertions that the Council has generally accommodated male recruits in the past were insufficient to plausibly state a Title VII claim, so too are they insufficient for the purpose of a § 1983 claim to demonstrate that Therault was "similarly situated in all material respects to the individuals with whom she seeks to compare herself," *Hu*, 927 F.3d at 96.  Absent a valid comparator, Therault fails to allege sufficient factual content to plausibly state a § 1983 claim for an equal protection violation against Council Director Fasano.  *Iqbal*, 556 U.S. at 678.

### 3. Qualified Immunity

Finally, I reject the Defendants' arguments that the § 1983 claims against Fasano and Drumm should be dismissed because they are entitled to qualified immunity. "In ascertaining whether the defendants are entitled to qualified immunity, we must look to . . . whether a reasonable person, acting under the circumstances the confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596–97 (2d Cir. 2003). "While qualified immunity may be 'successfully asserted' on a motion to dismiss the complaint, the defense 'faces a formidable hurdle' at the pleading stage. *Horn v. Stephenson*, 11 F.4th 163, 169–70 (2d Cir. 2021) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)). Here, more facts are required to determine whether it was objectively reasonable for Fasano and Drumm to believe that their conduct did not violate the Fourteenth Amendment.

Therault plausibly alleges that Fasano knowingly provided to the Town false information regarding her absences for training, which directly led to her termination. ECF No. 36 ¶¶ 44, 201–02. She also plausibly alleges that the Council notified Chief Drumm that it was at his department's "discretion to allow the Plaintiff to attend a future academy session," *id.* ¶ 209, and that Chief Drumm discriminated against her "on the basis of her gender by holding her to a different standard and terminating her from the Madison Police Department without allowing Plaintiff the ability to attend the Academy at a later date and time," *id.* ¶ 210. Accepting these allegations as true, I cannot find as a matter of law that it was objectively reasonable for Fasano and Drumm to believe that their conduct was lawful. Thus, I decline to dismiss the § 1983 claims against Fasano and Drumm in their personal capacity on the basis of qualified immunity.

IV.     **<u>CONCLUSION</u>**

In sum, the following claims may proceed:

- **Against the Council:** Count Eight under Title II of the ADA;
- **Against the Town:** Count Two under Title I of the ADA, Count Six, Count Nine;
- **Against Drumm:** Count Twelve (equal protection);
- **Against Fasano:** Count Eleven (due process).

All other claims, including Count Eleven for a violation of equal protection and Count Twelve for

a violation of due process, are hereby DISMISSED.


IT IS SO ORDERED.


                                                     /s/
                                        Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        April 22, 2025